NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

In re the Matter of:

JILLVONIE LA'SHANETTE TRAYLOR also known as JILLVONIE
LA'SHANETTE REEVES, *Petitioner/Appellant*,

*v.*

STATE OF ARIZONA ex rel. DEPARTMENT OF ECONOMIC SECURITY,
*Petitioner/Appellee,*

*and*

CALBERT CLARK REEVES JR., *Respondent/Appellee*.

No. 1 CA-CV 23-0166 FC
FILED 12-5-2023

_____

Appeal from the Superior Court in Maricopa County
No. FC2018-006597
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

_____

COUNSEL

Jillvonie La'shanette Reeves, Phoenix
*Petitioner/Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Petitioner/Appellee*

---

## MEMORANDUM DECISION

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

**H O W E**, Judge:

¶1        Jillvonie La'shanette Reeves ("Mother") appeals various aspects of the family court's dissolution decree ending her marriage to Calbert Clark Reeves Jr. ("Father"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the family court's decree. *Bowser v. Nguyen*, 249 Ariz. 454, 456 ¶ 8 (App. 2020). Mother and Father were married in 2013 and separated in 2018. Mother filed for divorce in March 2022. They share a child ("Child") born in 2015, who has lived with Mother since the parents' separation. The court held a trial on the petition for dissolution of the marriage in November 2022.

¶3        At trial, Mother requested that Father's parenting time be supervised, that she be awarded sole legal decision-making authority for Child, and that the court allow her to relocate to Atlanta, Georgia. As evidence that Father should not be allowed unsupervised contact with Child, Mother offered text messages that Father allegedly exchanged with a then-14-year-old girl. The court sustained Father's objection to the messages' admission because their content did not indicate that the person with whom Father was communicating was "underage."

¶4        Mother argued that she should be awarded sole legal decision-making authority because Father had gone months without seeing Child and had "abandoned" them. As for relocation, Mother acknowledged that Child had lived in Arizona her whole life, but argued that maternal aunts, an uncle, and cousins in Atlanta would serve as a "support team" if they relocated. She contended Father could afford to travel to Atlanta for his parenting time because he had previously traveled to Las Vegas, Nevada, in 2019. Mother offered a letter from her aunt explaining her support system, proposed living situation, and family ties in Atlanta. Father objected to admission of the letter as hearsay, which the court sustained.

**¶5**      The court awarded Mother and Father joint legal decision-making authority. The court also set forth a parenting time schedule in which Mother is Child's primary residential parent, but Father has unsupervised parenting time three weekends per month. The court denied Mother's motion for relocation. It reasoned that relocation would strain Father's ability to maintain his relationship with Child, and that deprivation of that relationship would be detrimental to Child's emotional and developmental needs. Mother timely appealed.

## DISCUSSION

**¶6**      Mother's opening brief lacks citations to relevant authorities, statutes, and portions of the record. *See* Ariz. R. Civ. App. P. 13(a). Her failure to comply with these rules makes our ability to evaluate her arguments and address her claims difficult. *See*, *e.g.*, *In re U.S. Currency in Amount of $26,980.00*, 199 Ariz. 291, 299 ¶ 28 (App. 2000) (refusing to consider unsupported and undeveloped arguments). Although she is representing herself, she is held to the same standards as a qualified attorney. *Higgins v. Higgins*, 194 Ariz. 266, 270 ¶ 12 (App. 1999). Father has not filed an answering brief, which may be considered a confession of reversible error. *See United Bonding Ins. Co. v. Thomas J. Grosso Inv., Inc.*, 4 Ariz. App. 285, 285 (1966). But in the exercise of our discretion, we will address the substance of Mother's appeal. *See Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994).

**¶7**      This court reviews child custody and relocation decisions for an abuse of discretion, viewing the evidence in the light most favorable to upholding the decision. *Owen v. Blackhawk*, 206 Ariz. 418, 420 ¶ 7 (App. 2003); *Vincent v. Nelson*, 238 Ariz. 150, 155 ¶ 17 (App. 2015).

## I.      Parenting Time and Legal Decision-Making Authority

**¶8**      Mother argues that the trial court erred in awarding Father unsupervised parenting time. She contends that the court erred in not admitting evidence that showed a relationship between Father and a minor; she argues that the relationship makes Father unfit for unsupervised parenting time. But the trial court did not err because Mother's evidence was not relevant to any material fact. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Ariz. R. Evid. 401. And if evidence is irrelevant, it is inadmissible. Ariz. R. Evid. 402. Here, Mother's only evidence was text communications between Father and an unidentified third party whom Mother alleged was a minor

child. The messages did not indicate the other party's age or an inappropriate relationship. The messages were thus irrelevant. The court did not abuse its discretion in awarding Father unsupervised parenting time.

¶9        Mother also argues that Father's "abandonment" of Child justifies termination of his legal decision-making authority. In determining legal decision-making, the court must consider all factors relevant to the child's physical and emotional well-being, including those set forth in A.R.S. § 25–403(A). And in making the decision between sole and joint decision-making, the court considers "(1) [t]he agreement or lack of an agreement by the parents regarding joint legal decision-making[;] (2) [w]hether a parent's lack of an agreement is unreasonable or is influenced by an issue not related to the child's best interests[;] (3) [t]he past, present and future abilities of the parents to cooperate in decision-making about the child to the extent required by the order of joint legal decision-making[;] and (4) [w]hether the joint legal decision-making arrangement is logistically possible." A.R.S. § 25–403.01(B).

¶10        Here, Mother and Father have no agreement, and the court found that Mother desired to "punish" Father by making it difficult for him to see Child, a motivation unrelated to Child's best interests. *See* A.R.S. § 25–403.01(B)(2). The court found that both parents were fit and capable of making decisions for Child, and that a joint arrangement was logistically possible. The court thus considered the necessary factors for Child's well-being and did not abuse its discretion in awarding joint legal decision-making authority.

## II.    Relocation

¶11        Mother argues that the court abused its discretion by not allowing her to relocate with Child to Atlanta, Georgia. When parents cannot agree about the relocation of a child, the trial court must "determine whether to allow the parent to relocate the child in accordance with the child's best interests." A.R.S. § 25–408(G). In determining this, the trial court must apply the factors set forth in A.R.S. § 25–408(I). The parent seeking to relocate has the burden to prove that the move is in the child's best interests. A.R.S. § 25–408(G); *Pollock v. Pollock*, 181 Ariz. 275, 277 (App. 1995).

¶12        The record supports the trial court's denial of relocation. The court found that Child is bonded to Father, and that depriving her of the relationship would be detrimental to her emotional and developmental needs. The court noted that relocating to Atlanta could promote Child's

stability "to the extent" it provided Mother with stability, but noted that "[t]hat stability is not, however, a foregone conclusion." The court also found that Mother's relocation request was "driven, at least in part, by her anger at Father for having 'abandoned' her and [Child]," and that his absence from Child's life after the move "would be detrimental to her emotional and developmental needs." The court further found that Arizona and Georgia are not reasonably close to each other, and that regular travel to Georgia would be time-consuming and potentially expensive. The court did not abuse its discretion in finding that relocation was not in the child's best interests.

¶13        Mother also argues that the court erred by not admitting her aunt's letter into evidence because it was hearsay. Hearsay is "a statement," other than one made by the declarant while testifying at the trial or hearing, "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c). The author of the letter, Mother's aunt, was not present to testify, and Mother identified no hearsay exception that would authorize the admission of the letter. The court did not abuse its discretion in not admitting the letter.

## CONCLUSION

¶14        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA